U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 1 9 2013

TONY R. MOORE, CLERK
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| ROBERT LEE SHEPPARD | CIVIL ACTION NO: 11-1885 |
| VERSUS | JUDGE DONALD E. WALTER |
| NEXION HEALTH AT VIVIAN, INC. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. #20] filed by the Defendant in the above captioned matter, Nexion Health at Vivian, Inc. ("Nexion"). Plaintiff, Robert Lee Sheppard ("Sheppard") opposes the motion. [Doc. #23]. For the reasons assigned herein, Defendant's motion is **GRANTED** and Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

## BACKGROUND INFORMATION

Sheppard filed suit against his former employer, Nexion, alleging that he was terminated for discriminatory reasons based on his race and age in violation of 42 U.S.C. § 2000e *et seq.*[1] Sheppard also alleges that he was subjected to a hostile work environment as defined by the act. Nexion moves for summary judgment arguing that Sheppard is unable to meet the prima facie requirements of a race or age discrimination claim, but even if he could, Nexion has provided a legitimate nondiscriminatory reason for his termination. Further, Nexion maintains that Sheppard has failed to offer any evidence to rebut their proffered nondiscriminatory reason for his termination other than his opinion that race and/or age played a part in the decision making process. Nexion also argues that Sheppard cannot establish a hostile work environment claim.

Nexion owns and operates numerous nursing homes in the State of Louisiana, including its

---

[1] Doc. #1

Vivian, Louisiana location at issue in this lawsuit. Sheppard, a 58 year old African American, was originally hired at the Vivian nursing home in 1976 when the facility was owned by Harris Manor.[2] Sheppard was hired as a nursing assistant, but was later transferred to work in housekeeping.[3] Thereafter, Harris Manor was purchased by Integrated Health Services, which kept Sheppard on staff and made him the supervisor of housekeeping and maintenance.[4]  When Nexion purchased the facility from Integrated Health Services in 2002 it retained Sheppard in his existing position as supervisor of maintenance and housekeeping. [5] In 2005, Nexion added laundry supervisor to Sheppard's duties and provided him with a small raise, which Sheppard interprets as a promotion.[6]

Each Nexion facility has a Director of Maintenance on staff to ensure that the facility is complying with government regulations.[7] The Director of Maintenance is responsible for following Nexion's maintenance policies and procedures which govern the daily, weekly and monthly maintenance duties that are required to properly maintain the facility.[8] [9]  The Director of

---

[2] Defendant's Statement of Undisputed Material Facts ¶ 18; Sheppard Affidavit (no paragraph or section numbers were provided in the affidavit.)

[3] Affidavit of Robert Lee Sheppard.

[4] Affidavit of Robert Lee Sheppard.

[5] Affidavit of Robert Lee Sheppard; Deposition of Robert Lee Sheppard at 21-23.

[6] Affidavit of Robert Lee Sheppard.

[7] Defendant's Statement of Undisputed Material Facts ¶ 3.

[8] Defendant's Statement of Undisputed Material Facts ¶ 4.

[9] In 2003, Nexion implemented a "maintenance package" (including schedules, checklists, and forms) as a guide to assist in the efficient operation of maintenance functions at all Nexion facilities, and to prevent safety hazards due to the breakdown of equipment. As part of the maintenance package each Director of Maintenance was required to perform daily duties including the following: checking water temperatures in resident rooms, checking roof vents and exterior lights and generators, and examining the grounds of the facility to identify potential safety hazards. Also required under the Nexion maintenance package was the timely completion

Maintenance for each Nexion facility reports to the Facility Administrator and to Nexion's Regional Environmental Director for Louisiana, who oversees the maintenance for all Nexion facilities in the state.[10]  Nexion's Regional Environmental Director reports to the Regional Director of Operations for Louisiana, William "Bill" Watson ("Watson"), who oversees the administration and operation of Nexion's Louisiana facilities.[11]

As early as 2008, Watson noted that Sheppard was overwhelmed with his duties in overseeing both the maintenance and housekeeping departments, which was evidenced by his inability to timely complete tasks in either department.[12]  Watson counseled Sheppard multiple times, but was unable to improve his productivity.[13]  In January 2009, Nexion hired a Director of Housekeeping for the Vivian facility who assumed all of Sheppard's housekeeping duties.[14] Although Sheppard's responsibilities were reduced his salary remained the same.[15]

Nine months later in September 2009, Jim DeRoche ("DeRoche") became Nexion's Regional Environmental Director for the State of Louisiana.  In this position DeRoche was responsible for overseeing the maintenance in all Louisiana facilities, and worked closely with the Director of

---

of scheduled maintenance reports identifying all maintenance issues and the repair thereof. [Deposition of Jim DeRoche at pg. 14-15; Declaration of Jim DeRoche at ¶¶ 6-7].

[10] Defendant's Statement of Undisputed Material Facts ¶ 5.

[11] Defendant's Statement of Undisputed Material Facts ¶ 6.

[12] Declaration of William Watson ¶ 12.

[13] Declaration of William Watson ¶ 12; Defendant originally submitted an unsigned declaration of William Watson.  The court allowed Defendant to substitute a signed declaration, which meets the summary judgment standard. [Doc. #27].

[14] Declaration of William Watson ¶ 13.

[15] Declaration of William Watson ¶ 14.

Maintenance for each facility. [16]   Upon his appointment DeRoche began monthly conference calls with the Directors of Maintenance for each of Nexion's Louisiana facilities to discuss maintenance policies and stress the importance of complying with the Nexion maintenance package.[17] DeRoche also stressed to all Directors of Maintenance at the local facilities the importance of Nexion's outside vendor policy, which was implemented to control the high costs associated with using outside vendors for repairs.[18] All Directors of Maintenance were required to call DeRoche for assistance and authorization before calling any outside vendor. [19]

When DeRoche was appointed as the new Regional Director of Environmental Services for Louisiana he inspected each of Nexion's thirteen Louisiana facilities.   When he inspected the Vivian facility he found that it was not being maintained in accordance with the minimum standards required of licensed nursing homes in Louisiana.[20]  For example, DeRoche found loose toilets in 16 resident rooms and cracked toilet seats in others.[21]  He also found that many of the ceiling tiles in resident rooms were cracked or dirty.[22]   Based on this information DeRoche determined that Sheppard was not performing the preventative maintenance tasks outlined in the Nexion maintenance package, and that Sheppard was not completing the required paperwork detailing the

---

[16] Defendant's Statement of Undisputed Material Facts ¶ 12.

[17] Defendant's Statement of Undisputed Material Facts ¶ 14.

[18] Defendant's Statement of Undisputed Material Facts ¶ 15.

[19] Defendant's Statement of Undisputed Material Facts ¶ 16.

[20] Declaration of Jim DeRoche ¶¶ 8-9; Deposition of Jim DeRoche at 12, 23.

[21] Declaration of Jim DeRoche ¶ 9.

[22] *Id.*

4

correction of deficiencies or whether daily maintenance tasks had been performed.[23]  DeRoche

counseled Sheppard on how to properly utilize the maintenance package and directed him to fill out

all corresponding paperwork.[24]

On November 9, 2009, DeRoche provided Sheppard with a list of 73 items to repair or

clean.[25]  Most of the items were small tasks and required minimal time to complete.[26]  In December

2009, DeRoche reminded Sheppard of the need to complete maintenance of the 73 noted items, but

by January 2010 only 10 of the 73 items on the lists had been completed.[27]  DeRoche describes

Sheppard as having difficulties completing even simple repairs.[28]  The Vivian facility is one of

Nexion's smaller units with only 70 beds.  However, DeRoche testified that the maintenance

directors at the other facilities (some with up to 200 beds) were capable of properly following the

maintenance schedule.[29]  Sheppard does not dispute that he had difficulties completing the list of

items provided to him.  However, he maintains that his tardiness was caused by the "piling on" of

additional duties by the facility administrator at the time, Gary Doolittle, who required him to strip

and wax the floors, which caused him to postpone the maintenance items given to him by DeRoche.[30]

On January 8, 2010, Sheppard received a written warning from Gary Doolittle for failing to

---

[23] Deposition of DeRoche at 23, 18.

[24] Declaration of DeRoche ¶ 9.

[25] Declaration of DeRoche ¶ 11.

[26] Declaration of DeRoche ¶ 11.

[27] Declaration of DeRoche ¶¶ 13-14; Sheppard deposition at 131-133.

[28] Declaration of DeRoche ¶ 4.

[29] Deposition of DeRoche at 38-39.

[30] Affidavit of Robert Lee Sheppard.

follow Nexion's outside vendor policy when he called a vendor to service kitchen equipment without first obtaining permission from DeRoche.[31]   A few days later on January 22, 2010, Sheppard was issued a final warning for various violations including: failing to follow the Nexion's preventative maintenance package, and most seriously, failing to perform water temperature checks and allowing the hot water temperature to remain at 137 degrees for approximately four days.[32]   The January 22, 2010 final warning also notes that Sheppard had only completed 10 of the 73 items assigned to him by DeRoche.[33]   Sheppard (by affidavit) denies that he committed any of the violations cited in his disciplinary record.[34]   However, during his deposition he admits that "it was too much" for him to timely complete the list of 73 maintenance items in addition to stripping and waxing the floors.[35]

On March 22, 2010, two months after Sheppard received his final warning, the Louisiana Department of Health and Human Services ("DHH") conducted an on-site evaluation of the Vivian facility and noted numerous statutory violations.[36][37]   Some of the violations cited by DHH included: loose floor tiles in resident rooms, missing baseboards, a broken armrest on a wheelchair, broken bedside potty chairs, dirty exhaust fans and ceiling vents, and a failure to maintain the required water

---

[31] Deposition of Robert Lee Sheppard at 78-79.

[32] Deposition of Jim DeRoche at 21, 27; Deposition of Robert Lee Sheppard at 116-117.

[33] Deposition of Robert Lee Sheppard at 133-134.

[34] Deposition of Robert Lee Sheppard at 116-117, 131, 134-136.

[35] Deposition of Robert Lee Sheppard at 134.

[36] Declaration of Jennifer Swim ¶¶ 20-22.

[37] Nexion is subject to various state and federal laws regulating nursing home facilities. More specifically, as a Medicare contractor Nexion is regulated by the Louisiana Department of Health and Human Services, which performs on-site evaluations to ensure that its contractors are meeting standards related to maintenance and safety.   [Declaration of Jennifer Swim ¶¶ 10-12].

temperature levels.[38]

In response to the DHH violations, the new facility administrator, Jennifer Swim ("Swim"), was required to develop and submit a plan of action to DHH.[39] [40] Swim discussed the DHH deficiencies with Sheppard and instructed him to make all necessary repairs, which required Sheppard to audit all of the resident rooms based on a weekly schedule to ensure the facility was brought into compliance with DHH regulations in a timely manner. [41] To facilitate the process, Swim provided Sheppard with weekly audit sheets that instructed him to audit five locations per week, make necessary repairs, and report his progress daily. [42] In addition to the repairs noted in the audit procedure, Sheppard was expected to perform his routine preventative maintenance duties as outlined in Nexion's maintenance package. [43] Swim states that despite specific instructions by herself and DeRoche, Sheppard failed to submit maintenance logs or reports.[44]

On April 22, 2010, Sheppard was asked by Swim to perform an immediate repair of a resident's cold water faucet because she was concerned for the resident's safety. [45] However, when she left for the evening the repair was not completed, nor was it completed upon her arrival the next

---

[38] Declaration of Jennifer Swim ¶ 20.

[39] Declaration of Jennifer Swim ¶ 23.

[40] Swim replaced Doolittle as the facility administrator on February 15, 2010. [Declaration of Jennifer Swim ¶¶ 4-5].

[41] Declaration of Jennifer Swim ¶¶ 24-25.

[42] Declaration of Jennifer Swim ¶¶ 24, 27.

[43] Declaration of Jennifer Swim ¶ 29.

[44] Declaration of Jennifer Swim ¶ 30;

[45] Declaration of Jennifer Swim ¶ 31.

7

morning.[46] On April 23, 2010, Swim,  Watson, and DeRoche conferred about Sheppard's failure to

fix the faucet, and all agreed that Swim would have to submit a write-up.[47] The Regional Human

Resources specialist, Brijette Stevenson (African American), reviewed Sheppard's disciplinary file

and confirmed that the only step remaining was termination.[48]  Upon agreement by Swim, Watson,

DeRoche and Stevenson, Sheppard was terminated for his repeated failure to perform his assigned

job duties and daily maintenance tasks. [49]

Sheppard describes his final months at Nexion and his interactions with Swim differently.

He states that when Swim became the new administrator in February 2010 she added daily checklists

to complete, placed logs at the nursing stations, ordered him to pick-up paper and cigarette butts and

perform other tasks that should have been performed by housekeeping, which was too much for him

to keep up with in addition to his regular duties.[50]  Sheppard describes Swim as "out to terminate"

his employment.  As for the final violation involving the broken cold water faucet, Sheppard claims

that Swim had already written him up but was merely waiting for the date to use it. [51]   He also

claims that Swim spoke poorly to him and alleges that she called him "boy" when asking him to

perform a task for her.  Finally, Sheppard states in his affidavit that he always performed his duties

and that he was never told that he was doing anything wrong.  Sheppard claims that Swim wanted

him terminated so that she could hire a man named Billy Tuggle (Caucasian male over the age of 40)

---

[46] Declaration of Jennifer Swim ¶ 32.

[47] Declaration of Jennifer Swim ¶ 34.

[48] Declaration of Jennifer Swim ¶ 35.

[49] Declaration of Jennifer Swim ¶ 37; Declaration of William Watson ¶ 17.

[50] Affidavit of Robert Lee Sheppard.

[51] Affidavit of Robert Lee Sheppard.

to take his position.[52]

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [], admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." [53] [54]

A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm*

---

[52] Affidavit of Robert Lee Sheppard.

[53] Plaintiff objects to Defendant's use of the declarations submitted by Jennifer Swim, William Watson, and Jim DeRoche rather than notarized affidavits. This objection is overruled. A formal affidavit is no longer required. 28 U.S.C. § 1746 allows a declaration subscribed under penalty of perjury to substitute for an affidavit. Plaintiff also makes a general objection to the declarations asserting that they are not premised on the declarant's personal knowledge and that they "do not recite specific facts, not to mention uncontested facts". Plaintiff's objection is overruled. The declarations in question contain specific factual assertions, are based on the personal knowledge of key individuals involved in Plaintiff's termination, and are not merely conclusory.

[54] Plaintiff also objects to the exhibits attached to Defendant's motion for summary judgment because they are not authenticated by an affidavit or declaration. Plaintiff's objection is sustained. *See Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987). While some of the attached exhibits were likely attached to the submitted depositions they were not labeled or identified as such. However, the various declarations, affidavits, and depositions are sufficient by themselves for the court to rule on the motion.

*Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes

of the motion, unless controverted as required by this rule." Local Rule 56.2.[55]

## LAW AND ANALYSIS

Sheppard alleges that Nexion terminated his employment because of his race and age. Under Title VII a plaintiff may prove discrimination through direct or circumstantial evidence. *Jones v. Robinson Property Group*, 427 F.3d 987, 992 (5th Cir. 2005).  Claims of race and age discrimination are governed by the same evidentiary framework. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377-78 (5th Cir. 2010).

### A.    No evidence of direct discrimination because of Sheppard's race or age.

If an employee presents credible direct evidence that discriminatory animus partially motivated or was a substantial factor in the employer's adverse employment action, it then becomes the employer's burden to prove by a preponderance of the evidence that the same employment decision would have been made regardless of the alleged discriminatory animus. *Jones*, 427 F.3d at 992. Direct evidence is that which, if believed, proves a fact without inference or presumption. *Id.*

When a person with decision making authority displays racial animus that fact may constitute direct evidence of discrimination. *Id.* at 933.  However, for such comments to be sufficient evidence of discrimination they must be: (1) related to the protected class of persons of which plaintiff is a member; (2) proximate in time to the challenged adverse action; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Id.* (citing *Krystek v. University of Southern Mississippi*, 164 F.3d 251, 256 (5th Cir. 1999).

Sheppard alleges that Swim referred to him as "boy" in the presence of other employees.[56]

---

[55] The court notes that Plaintiff failed to follow Local Rule 56.2.  Plaintiff submitted a numbered list of Defendant's uncontested material facts and only replied with either "contested" or "uncontested".

[56] Complaint ¶ 9.

Sheppard also states in his affidavit that Swim "became derisive in her behavior, teasing me about not being able to read during meetings with other employees; and calling me "boy" when asking me to get something for her." [57]   Sheppard states in his deposition that Swim only called him "boy" on one occasion.[58]  Swim denies that she ever referred to Sheppard as "boy".[59]

Accepting Sheppard's allegations as true for the purpose of this motion, the alleged comment by Swim is insufficient to provide direct evidence of discrimination.  Sheppard has presented no evidence that the comment was related to or uttered proximate in time with his termination.  Further, although Swim was the administrator at the Vivian facility, the decision to terminate Sheppard was made jointly between Swim, her supervisor, Watson, and a human resources specialist.  Accordingly, Sheppard cannot maintain a claim premised on direct evidence of discrimination due to his race.  Further, Sheppard has offered no direct evidence of discrimination because of his age.

**B.**     **Plaintiff cannot meet the burden of presenting a prima facia case of race or age discrimination.**[60] [61]

Title VII provides that a plaintiff may prove discrimination through circumstantial evidence applying the *McDonnell Douglas* burden-shifting analysis.  *See Davis v. Dallas Area Rapid Transit,*

---

[57] Affidavit of Robert Lee Sheppard.

[58] Deposition of Robert Lee Sheppart at 245.

[59] Declaration of Jennifer Swim ¶ 43.

[60] Plaintiff argues in his opposition that because nothing in his background demonstrated that he was skilled in maintenance or repair of equipment Nexion essentially took advantage of him by placing him in a skilled position while benefitting from his low salary. [Doc. #23 at 5]. Thus, Plaintiff maintains that if he was not qualified for the position of maintenance director he was "constructively fired".  *Id.*   Plaintiff cites no case law to support this argument.

[61] Plaintiff also argues that the disciplinary records supporting his termination are "confusing".  As stated *supra*, the documents in question were not properly authenticated by the Defendant.  Accordingly, the documents are not proper summary judgment evidence for the court's consideration.

383 F.3d 309, 316-317 (5th Cir. 2004). To survive summary judgment under the *McDonnell Douglas* framework a plaintiff must first present evidence of a prima face case of discrimination. If the plaintiff presents a prima facie case then discrimination is presumed and the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying adverse employment action. If the employer is able to state a legitimate rational for the adverse employment action the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination. *Davis*, 383 F.3d at 317.

To establish a prima facie case of race or age discrimination a plaintiff must demonstrate that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some employment action by the employer; and (4) was replaced by someone outside his protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). A plaintiff setting forth an age discrimination claim may meet the fourth prong by showing that he was either (I) replaced by someone outside his protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Berquist v. Washington Mutual Bank*, 500 F.3d 344, 349 (5th Cir. 2007).

Sheppard cannot carry his burden to demonstrate a prima facie case of discrimination based on his race or his age because he cannot establish that he was qualified for the position of Director of Maintenance. Nexion officials learned in March 2010 that Sheppard was unable to read when he was having difficulties completing the forms contained in the Nexion maintenance package. Swim confronted Sheppard about his reading difficulties after she received a form that indicated Sheppard had performed a weekly maintenance check of the elevator even though the Vivian facility

13

does not have an elevator.[62] [63] In response to this information, Sheppard concedes that he is not a good reader, but states that he was able to memorize certain maintenance task lists and he would ask a co-worker to read things for him.[64]

Nexion's Maintenance package requires the Director of Maintenance at each Nexion facility to follow a specific maintenance protocol timeline, perform all necessary repairs, and maintain detailed and accurate records, including the completion of logs and worksheets.[65] Thus, it is an essential part of the job that the Director of Maintenance be able to read, write and follow the protocol of the maintenance packet. Further, Sheppard concedes in his opposition brief that he has no training or certificates that would make him qualified for the position of Director of Maintenance.[66] Before Sheppard was hired at the nursing home he worked as a garbage man for the town of Vivian, Louisiana. Although Sheppard attended a year and half of art college, he does not possess a vocational license.[67] Most significant, however, is that Sheppard admits in his affidavit that the job requirements (including the repairs and paperwork required by the DHH inspection) were simply too much for him to keep up with at the time he was terminated.[68]

Accordingly, Sheppard's failure to demonstrate that he was qualified for the job of Director of Maintenance precludes his ability to establish a prima facie case of discrimination on the basis

---

[62] Declaration of Jennifer Swim ¶ 44.

[63] Sheppard was asked to read Nexion maintenance documents during his deposition and was unable to do so. [Deposition of Robert Lee Sheppard at 52, 95, 159, 175, and 219].

[64] Affidavit of Robert Lee Sheppard.

[65] Declaration of Jim DeRoche ¶¶ 6-7.

[66] Doc. #23 at 5.

[67] Affidavit of Robert Lee Sheppard.

[68] Affidavit of Robert Lee Sheppard.

14

of race or age.

**C.**   **Even if Sheppard could meet his prima facie burden Nexion has articulated a legitimate nondiscriminatory explanation for his termination, to which Sheppard has failed to offer evidence of pretext.**

If Sheppard were able to meet his prima facie burden the court would have to presume that discrimination occurred unless Nexion could articulate a legitimate, nondiscriminatory reason for Sheppard's termination. *Davis*, 383 F.3d at 317.   The employer's burden is only one of production, not persuasion, involving no credibility assessments. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  Once this occurs the inference of discrimination disappears and the burden falls back on the plaintiff to present evidence that the employer's proffered reason was a mere pretext for discrimination. *Davis*, 383 F.3d at 317.

Even if the court assumes for the purposes of this motion that Sheppard has met his prima facie burden, Nexion has presented a legitimate nondiscriminatory explanation for his termination; Sheppard's repeated failure to timely complete maintenance tasks.  Nexion maintains that Sheppard was terminated after receiving numerous verbal warnings and counseling sessions regarding his performance deficiencies, and after two previous disciplinary write-ups. The numerous maintenance violations cited by DHH are sufficient on their own to demonstrate that Sheppard was not properly performing his job duties as the Director of Maintenance for the Vivian facility. [69]  A citation by DHH places Nexion's license to operate a nursing home in jeopardy, making Nexion's decision to discipline or terminate the employee or employees responsible for maintaining the facility squarely within sound business practices.

In response, Sheppard counters that the reasons articulated by Nexion for his termination are merely pretext for discrimination due to his race and/or age.  To support his burden of demonstrating

---

[69] Declaration of Jennifer Swim ¶¶ 20, 21, 22.

15

that Nexion's stated reasons for his termination are pretextual Sheppard offers various theories, which the court will address in turn.

First, Sheppard cites Nexion's failure to provide him with a merit-based pay raise despite his thirty-three years of employment with an excellent record. Sheppard explained during his deposition that although he did receive annual cost of living adjustments he believed that Nexion should have granted him merit-based raises. His complaint does not identify comparator employees who received merit-based raises, and when questioned at his deposition Sheppard admitted that he did know whether any Director of Maintenance within the Nexion system had ever received merit-based pay raises.[70] Sheppard has produced nothing more than his own speculation that his lack of an additional pay raise establishes pretext.

Second, Sheppard argues that his receipt of the "employee of the month" award a mere five weeks prior to his termination is suggestive of pretext. This argument is without merit because the "employee of the month" award given to Sheppard was decided upon by the residents of the nursing home facility.[71] Nexion does not dispute that Sheppard was well-liked by the residents. This is insufficient to establish pretext.

Third, Sheppard argues that Swim had an agenda to replace him with a man named Billy Tuggle, who was the Director of Maintenance for another Nexion facility. In his deposition Sheppard states that he learned of Swim's alleged plan after his termination from a man named "Daniels" who drives the transport van for Nexion's Pierremont facility. Sheppard explained that Daniels heard of the alleged plan from an unnamed secretary.[72]   A rumor heard third hand by

---

[70] Deposition of Robert Lee Sheppard at 54-55.

[71] Deposition of Robert Lee Sheppard at 75-76.

[72] Deposition of Robert Lee Sheppard at 184.

Sheppard is insufficient to establish pretext. Most importantly, even if the rumor were true Sheppard does not even allege that Swim's desire to replace him with Mr. Tuggle was motived by his race or age.

Fourth, Sheppard alleges that Swim made jokes about his inability to read in front of other employees. Accepting this statement as true for the purposes of this motion, such vile behavior is undoubtedly reprehensible but not necessarily discriminatory. Sheppard has offered no evidence to link the alleged taunting to his race or his age.

Fifth, as noted above, Sheppard alleges that Swim referred to him as "boy" on one occasion. However, for a comment to provide sufficient evidence of discrimination it must be: (1) related to Plaintiff's race; (2) proximate in time to his termination; (3) uttered by individual with authority over his termination; and (4) related to the employment decision. *Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400 (5th Cir. 2001). As discussed *supra*, even if the court assumes the comment was made by Swim no evidence has been presented to establish that the stray remark was uttered proximate in time with the adverse employment decision. Further, although Swim was the administrator at the Vivian facility the decision to terminate Sheppard was made jointly between Swim, her supervisor, Watson, and a human resources specialist.[73] Accordingly, Swim's alleged use of the term "boy" on one occasion is insufficient to demonstrate pretext.

Sixth, Sheppard alleges that Swim gave him job duties outside of his normal responsibilities and required him to provide a daily report of his activities. Sheppard believes that the additional work and report requirements were part of Swim's alleged campaign to have him terminated. Again, even if the court accepts this statement as true Plaintiff has not provided any evidence other than his own belief premised on a rumor that Swim wanted to replace him with Mr. Tuggle.

---

[73] Declaration of Jennifer Swim ¶¶ 34, 35, 36, 37; Declaration of William Watson ¶ 17.

Plaintiff's subjective belief is insufficient to demonstrate pretext.

**D.    Sheppard's Claims of Harassment and/or Hostile Work Environment**

Sheppard alleges that "Defendant's actions constituted a hostile environment because of his race". [74]   A claim of hostile work environment requires a plaintiff to prove he: (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).   The court must examine the evidence using a "totality of the circumstances" test that focuses on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347 (5th Cir. 2007) (citation omitted).   "Although discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." *Id.* at 347-348 (quotations and citations omitted).

Sheppard has alleged that Swim uttered one potentially racial comment.   There is   no evidence that the term "boy" was used on a frequent basis.  Sheppard stated unequivocally in his deposition that the only instance of harassment he encountered at Nexion was when Swim allegedly called him "boy". [75]   Assuming that Mr. Sheppard's allegations are true, the use of the term "boy"

---

[74] Complaint ¶ 13.

[75] Deposition of Robert Lee Sheppard at 245.

on a single occasion is insufficient to a level of severity or pervasiveness necessary to establish a hostile work environment claim under Title VII. *See Cavalier v. Clearlake Rehabilitation Hospital*, 306 Fed. Appx. 104, 107 (5th Cir. Jan. 7, 2009) (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999)). Accordingly, Sheppard cannot maintain a hostile work environment claim.

**CONCLUSION**

For the reasons assigned herein, Plaintiff's claims against the Defendant, Nexion Health at Vivian, Inc., are hereby **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED**, this 14 day of February, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE